# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

---

SAMANTHA ROOP,

*Plaintiff - Appellant,*

v.

NICHOLAS JAMES DESOUSA,

*Defendant - Appellee,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

---

**OPENING BRIEF OF APPELLANT**

---

Samantha B. Cohn
GEOFF MCDONALD
& ASSOCIATES, P.C.
8720 Stony Point Parkway
Suite 250
Richmond, VA 23235
757-281-8904
scohn@mcdonaldinjurylaw.com

John S. Koehler
THE LAW OFFICES OF
JAMES STEELE PLLC
P. O. Box 21542
Roanoke, VA 24018
540-632-5994
john@jamessteelelaw.com

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1376     Caption: Samatha Roop v. Nicholas James DeSousa

Pursuant to FRAP 26.1 and Local Rule 26.1,

Samantha Roop
(name of party/amicus)

who is _____ Appellamt _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: *John S. Koehler*
John S. Koehler (Jun 4, 2023 19:47 EDT)

Date: _____

Counsel for: Samantha Roop Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................i

TABLE OF AUTHORITIES .............................................................. ii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUE ...................................................................1

STATEMENT OF CASE ....................................................................1

SUMMARY OF ARGUMENT .........................................................11

STANDARD OF REVIEW ..............................................................14

ARGUMENT AND AUTHORITIES .................................................14

     I.     The District Court Erred by Relying on Precedent from Outside Virginia in Sustaining DeSousa's Rule 50 Motion ...............14

     II.    The District Court's Finding that the Pelvic Prolapse was a Pre-Existing Degenerative Condition that Required Expert Testimony to Establish Causation is Not Supported by the Evidence ............................................................................19

CONCLUSION ..............................................................................20

REQUEST FOR ORAL ARGUMENT.............................................20

## Cases

*A Helping Hand, LLC v. Balt. Cty.*,
  515 F.3d 356 (4th Cir. 2008) ................................................................ 14

*Anand v. Ocwen Loan Servicing, LLC*,
  754 F.3d 195 (4th Cir. 2014) ................................................................ 11

*Bly v. Southern Ry. Co.*,
  31 S.E.2d 564 (Va. 1944) ...................................................................... 15

*Brown v. Koulizakis*,
  331 S.E.2d 440 (Va. 1985) .................................................................... 18

*Bussey v. E.S.C. Restaurants, Inc.*,
  620 S.E.2d 764 (Va. 2005) .................................................................... 15

*Dotson v. Pfizer, Inc.*,
  558 F.3d 284 (4th Cir. 2009) ................................................................ 14

*Fontenot v. Taser Int'l, Inc.*,
  736 F.3d 318 (4th Cir. 2013) ................................................................ 14

*Fultz v. Delhaize America, Inc.*,
  677 S.E.2d 272 (Va. 2009) .................................................................... 18

*Gasperini v. Ctr. For Humanities, Inc.*,
  518 U.S. 415 (1996) .............................................................................. 11

*Gwaltney v. Reed*,
  84 S.E.2d 501 (Va. 1954) ...................................................................... 15

*Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*,
  514 F.3d 327 (4th Cir. 2008) ................................................................ 11

*Lavis v. Reverse Mortg. Solutions, Inc.*,
  40 F.4th 181 (4th Cir. 2022) ................................................................ 14

*McCauley v. Purdue Pharm. L.P.*,
  331 F. Supp. 2d 449 (W.D. Va. 2004) .................................................... 9

*Moke Am. LLC v. Am. Custom Golf Cars, Inc.*,
  Civil No. 3:20cv400 (E.D. Va. 2022) .................................................... 15

*Mullin v. Mullin*,
   610 S.E.2d 331 (Va. Ct. App. 2005) ................................................ 16

*Norfolk & Western Ry.Co. v. Chittum*,
   468 S.E.2d 877 (Va. 1996) .............................................................. 17

*Peterson v. Neme*,
   281 S.E.2d 869 (Va. 1981) .............................................................. 16

*Rascher v. Friend*,
   689 S.E.2d 661 (Va. 2010) .............................................................. 18

*Rogers v. Kijakazi*,
   ___ F.4th ___, (4th Cir. 2023) ......................................................... 15

*Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax*
 *Seven Ltd. Partnership*,
   480 S.E.2d 471 (Va. 1997) ........................................................ 13, 18

*Smith v. GMC*,
   376 F. Supp. 2d 644 (W.D. Va. 2005) ............................................. 12

*Summers v. Syptak*,
   801 S.E.2d 422 (Va. 2017) ...................................................... 9, 15, 17

*Sumner v. Smith*,
   257 S.E.2d 825 (Va. 1979) .................................................... 10, 15, 17

*Taylor v. Shreeji Swami, Inc.*,
   820 F. App'x 174 (4th Cir. 2020) ...................................................... 8

*Todt v. Shaw*,
   286 S.E.2d 211 (Va. 1982) .............................................................. 15

*United States v. Groves*,
   ___ F.4th ___, (4th Cir. 2023) ......................................................... 15

*United States v. Robinson*,
   55 F.4th 390 (4th Cir. 2022) ........................................................... 15

*Walrod v. Matthews*,
   171 S.E.2d 180 (Va. 1969) .............................................................. 16

*Webster v. Chesterfield Cnty. Sch. Bd.*,
   534 F. Supp. 3d 537 (E.D. Va. 2021) ............................................... 15

## Statutes

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1294 ................................................................. 1

28 U.S.C. § 1332 ................................................................. 1

28 U.S.C. § 1441 ................................................................. 1

## Rules

Fed. R. Civ. P. 26 ............................................................3, 4

Fed. R. Civ. P. 50 ..........................................................*passim*

Fed. R. Civ. P. 59 ..........................................................9, 19

## Other Authorities

L. Huang, *Cellular senescence: A pathogenic mechanism of pelvic organ prolapse (Review)*, 22 Molecular Med. Reps. (2020) ........................................................... 2

N. Kohli and D. Patterson, *InterStim® Therapy: A Contemporary Approach to Overactive Bladder*, Obstetrics & Gynecology 2009 Winter (2009) ...................... 4

N. Price, A. Slack, and S.R. Jackson, *Laparoscopic hysteropexy: the initial results of a uterine suspension procedure for uterovaginal prolapse*, British Journal of Obstetrics and Gynecology, Vol. 117, Issue 1 (2010) ............................................ 2

## JURISDICTIONAL STATEMENT

This case was originally filed in the Circuit Court of the City of Richmond, Virginia and removed from state court on the motion of the Defendant/Appellee to the United States District Court for the Eastern District of Virginia, which had diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. [JA13-20.] This Court has appellate jurisdiction to review the judgment of the District Court in a diversity case removed from state court under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF ISSUE

The District Court erred by relying on precedent from outside Virginia in sustaining DeSousa's Rule 50 Motion because Virginia law does not have an absolute requirement for expert evidence to establish a causal relationship between the defendant's negligence and the development and/or worsening of a medical condition in a non-medical malpractice tort action for personal injury, especially where, as here, the tortfeasor presents no countervailing testimony to rebut the fact witnesses with respect to causation.

## STATEMENT OF CASE

On June 3, 2021, Samantha Roop filed a complaint in the Circuit Court of the City of Richmond, Virginia against Nicholas James DeSousa. *See Roop v. DeSousa*, CL21002397-00 (Richmond Cir. Ct. June 3, 2021). DeSousa filed a notice of removal in the circuit court and the United States District Court for the Eastern District of Virginia, 28 U.S.C. § 1441, on October 26, 2021, asserting federal jurisdiction on diversity grounds. 28 U.S.C. § 1332. [JA13-20.]

Roop's complaint alleges that on July 7, 2019, she and DeSousa, a Maryland resident, were involved in an automobile accident in Middlesex, Virginia. Although DeSousa initially denied liability and asserted a defense of contributory negligence, he subsequently conceded that his negligence was the sole proximate cause of the automobile accident and admitted liability for certain damages, while denying liability for other damages and for the medical necessity and reasonableness of the treatment for those for which liability was admitted. Accordingly, the matter proceeded to trial on the contested injuries and the quantum of damages. [JA13-14, JA16-18.] Specifically relevant to this appeal is Roop's allegation that she suffered a systemic pelvic prolapse impacting the bladder, uterine cavity, vaginal cavity, and vaginal vault as a direct and proximate cause of the automobile accident. This injury required extensive medical treatment and surgery and continues as a permanent injurious condition. [1]

---

[1] A "prolapse" is not a single condition but describes a range of disorders that can occur in different internal structures of the human body similar to hernias and ulcers. A "pelvic prolapse," also known as pelvic organ prolapse or uterine prolapse, is a range of gynecological conditions in which the pelvic organs herniate into the uterine/vaginal cavity due to weakness or damage to the ligaments and/or muscular structures of the pelvic floor requiring and surgery to restore the organs to their proper location within the pelvic cavity. *See generally* L. Huang, *Cellular senescence: A pathogenic mechanism of pelvic organ prolapse (Review),* 22 Molecular Med. Reps. 2155, 2155 (2020); N. Price, A. Slack, and S.R. Jackson, *Laparoscopic hysteropexy: the initial results of a uterine suspension procedure for uterovaginal prolapse*, British Journal of Obstetrics and Gynecology, Vol. 117, Issue 1, 62-68 (2010).

In her Rule 26 disclosure filed November 15, 2021, Roop identified eleven treating healthcare facilities whose employees were likely to have discoverable information relevant to her injuries and damages resulting from the automobile accident. [JA23-26.] In her designation of experts filed February 21, 2022, Roop identified Teresa Camden, M.D. as her only expert. [JA42-46.]

On February 8, 2022, DeSousa conducted a de bene esse deposition of Dr. Nathan Guerette. [JA62.] During the deposition, DeSousa's counsel extensively questioned Dr. Guerette concerning Roop's pelvic prolapse. Dr. Guerette stated that the pelvic prolapse was a new injury when he examined Roop in October 2019, at which time he also determined that Roop's InterStim® device was damaged. Following replacement of the InterStim® device, Roop continued to suffer worsening symptoms which Dr. Guerette attributed to the pelvic prolapse when she next consulted Dr. Guerette in January 2020. Dr. Guerette attempted to address the symptoms by reprogramming the InterStim®, but Roop's pain and incontinence issues did not abate. [JA77-79.]

On March 21, 2022, Roop filed a motion seeking relief from the trial schedule and enlargement of the deadline for designating her expert witnesses. Therein, she noted that Dr. Guerette had been identified in discovery responses as a potential witness prior to the original Rule 26 deadline, but through an oversite had not been included in the expert witness designation. Roop sought to enlarge the time for

designating Dr. Guerette as an expert witness regarding her pelvic prolapse, a damaged InterStim® device,[2] and other intimate pelvic injuries that were a result of the automobile accident. As Dr. Guerette had been deposed by DeSousa on February 8, 2022, prior to the Rule 26 deadline, Roop maintained that DeSousa would suffer no prejudice or surprise by permitting enlargement of the deadline to designate expert witnesses. [JA47-53.]

In January 2021, Dr. Guerette determined that Roop's pelvic prolapse, which had been "stage 2" when it first was diagnosed following the 2019 automobile accident, had advanced to "stage 3," requiring surgical repair. Dr. Guerette performed surgery to restore the tissue wall between the uterine and pelvic cavities on February 10, 2021. [JA79-84.]

DeSousa's counsel questioned Dr. Guerette on potential causes of a pelvic prolapse, including the possibility that it was caused by the June 2019 automobile accident. Dr. Guerette indicated, in response to hypothetical scenarios posed by counsel, that the pelvic prolapse would not have been caused by Roop's assisting her husband, who was an automotive mechanic, in his shop, though conceding that

---

[2] InterStim® therapy, a type of sacral neuromodulation (SNM) or sacral nerve stimulation (SNS) therapy, used an implanted device to stimulate the sacral nerves to correct urinary or fecal incontinence. N. Kohli and D. Patterson, *InterStim® Therapy: A Contemporary Approach to Overactive Bladder*, Obstetrics & Gynecology 2009 Winter, 19-27 (2009).

a prolapse could result from "lifting, straining, childbirth, [and] traumatic events." [JA86-90.]

On March 23, 2022, DeSousa filed an opposition to the motion to enlarge the deadline for designating experts. Therein he alleged that in deposing Dr. Guerette, "At no point did Dr. Guerette relate his treatment to the automobile accident. He testified he could not relate the same." [JA45-59.] In an order of even date, the District Court denied the motion to enlarge the trial schedule as "devoid of merit." [JA96.]

On March 28, 2022, DeSousa filed a motion in limine and supporting brief to exclude Dr. Guerette from testifying at trial and to exclude evidence of the treatment he rendered to Roop. [JA97-106.] Roop filed her opposition to the motion on April 8, 2022, with a reply filed by DeSousa on April 12, 2022. [JA174-179, JA1149-1160.] The District Court granted the motion in part and denied it in part on May 3, 2022, permitting Dr. Guerette to testify as a fact witness, but subject to certain limitations. [JA212-214.]

On May 13, 2022, Roop filed an order of proof regarding the testimony of Roop and Dr. Guerette concerning the injuries relevant to his treatment of Roop. An amended order of proof was filed May 19, 2022, which expanded upon the original and added the expected testimony of Gerard Barton, Roop's partner. [2218-20.]

DeSousa filed a responding offer of proof in which, *inter alia*, he renewed his objection to Dr. Guerette being permitted to testify as a fact witness. [JA222-226.]

Following receipt of the orders of proof, the District Court entered an order dated May 27, 2022, clarifying the parameters of the evidence the District Court would permit Dr. Guerette to present through his testimony. In this order, the District Court described how the trial would be bifurcated, with the first phase being addressed to causation as to the contested injuries, including injuries involving Roop's pelvic and uterine areas. The Court stated that "if and only if Plaintiff establishes causation *to the satisfaction of the jury* as to the contested injuries would the trial proceed to a second phase for presentation of the treatment and related medical bills, along with pain and suffering, resulting from these injuries." (Emphasis added.) [JA228-230.]

The District Court further clarified that

Dr. Guerette may not provide expert testimony as to the cause of Plaintiff's injuries. However, Dr. Guerette may testify as Plaintiff's treating physician in both phases of the trial. During Phase One (addressing the issue of causation), Dr. Guerette may only provide testimony about his treatment of Plaintiff during the time period of 2011-13 and then the results of his examination when Plaintiff returned to him for treatment in October of 2019 . . . Dr. Guerette may not provide any expert testimony about the cause of any injuries that he observed when he examined and treated Plaintiff in October of 2019.

[JA229.]

A trial before a jury was conducted September 12-14, 2022. Jury selection required a full day, and evidence was received beginning on the second day of trial. The court heard testimony from Roop, Dr. Guerette, and Barton for the plaintiff.

Roop testified that while she had been under Dr. Guerette's care prior to the automobile accident, she had previously not been diagnosed with a pelvic prolapse, stating that she had never heard of the condition. [JA436.] Dr. Guerette confirmed that prior to the 2019 automobile accident he had not treated Roop for a pelvic prolapse and that there was no indication of any issue with the tissue structure dividing the pelvic and uterine cavities.[3] [JA508-509.]

Following the October 2019 automobile accident, Roop reported worsening urinary incontinence symptoms at which time Dr. Guerette "evaluated her pelvic support, she was noted to have apical and anterior pelvic organ prolapse." Dr Guerette noted in Roop's medical records that she related the onset of symptoms shortly after the June 2019 automobile accident. [JA512-514.] On cross-examination, Dr. Guerette acknowledged that in 2011 he had recorded that Roop had a "first-degree cystocele," a type of *vaginal* prolapse, but that it was not "clinically

---

[3] Although DeSousa sought to prove that Roop had suffered a fall from a horse in the late summer of 2019, this was expressly denied by Roop on direct and cross examination and no other evidence of any trauma or injury occurring between the date of the automobile accident and the diagnosis of the pelvic prolapse was adduced at trial. [JA90-91, JA104-105, JA182, JA427, JA 438-439, JA459-463.]

significant" and was "substantially different" from the *pelvic* prolapse suffered in 2019. Dr. Guerette expressly testified that the condition observed in 2011 was not associated with Roop's clinical symptoms in 2019 and the vaginal prolapse had not progressed in the intervening 8 years. [JA518-520.] On redirect examination, Dr. Guerette reiterated that in 2011 Roop had "zero" indication of pelvic prolapse, and that the 2011 cystocele or anterior vaginal prolapse was in the first stage requiring no treatment, whereas in 2019 she had extensive cystocele, uterine, and apical prolapses not related to the 2011 vaginal prolapse. [JA524-525.]

At the conclusion of Roop's evidence, DeSousa made an oral motion under Rule 50 to enter judgment for him as to the liability for the damage to Roop's InterStim® device and the pelvic prolapse injuries. Following argument and relying on *Taylor v. Shreeji Swami, Inc.*, 820 Fed. Appx. 174, 176 (4th Cir. 2020), a case applying North Carolina law cited by DeSousa, the District Court granted summary judgment as to the pelvic prolapse claim but permitted the claim for damage to the InterStim® device to go to the jury. The jury returned its verdict finding that the evidence had not proven a causal link between the damage to the InterStim® device and the June 2019 automobile accident. [JA547-561, JA812-813.]

The trial proceeded to the damages phase with the jury receiving evidence of damages only as to DeSousa's admitted liability for injuries she sustained in the accident other than the pelvic prolapse and damage to the InterStim® device. The

jury returned a verdict for Roop in the amount of $105,216 without pre-judgment interest. [JA871.]

On October 14, 2022, Roop filed a motion for a new trial under Rule 59(a) to permit her to have the issue of causation of her pelvic prolapse injury submitted to a jury. Therein, she maintained that the District Court erred in its application of *Taylor*, applying North Carolina law, to a case governed by Virginia law. She further contended that the District Court inconsistently applied its pre-trial ruling regarding Dr. Guerette's testimony as a fact witness. [JA816.] DeSousa filed his opposition to Roop's motion on October 21, 2022. [JA842-851.]

The District Court issued a memorandum opinion and final order on March 9, 2023. [JA868-917.] As relevant to its reliance on *Taylor*, the District Court recognized that it must apply Virginia Law, but further stated its view that "the 4th Circuit's analysis of North Carolina law to similar facts remains highly persuasive" and that it was permissible to "look to our sister and circuit courts for guidance." Thus, while recognizing that while "[u]nder Virginia law, a statutory presumption exists that expert testimony is required for medical malpractice suits . . . [n]o such presumption exists for negligence suits under Virginia law," the District Court went on to rely upon *McCauley v. Purdue Pharma L.P.*, 331 F.Supp. 2d 449, 464 (W.D. Va. 2004), applying the law of Tennessee, and *Summers v. Syptak*, 801 S.E.2d 422, 426 (Va. 2017), a medical malpractice case, to support its application of the "sister

courts'" analysis to Virginia law because "the analogy [to sister court law] still holds true." [JA906-910.]

The District Court also characterized Roop's pelvic prolapse as a "degenerative condition" related to the 2011 vaginal prolapse. The Court stated that Roop's pelvic prolapse arose as a degenerative condition "roughly eight years before the accident" and that "lay testimony cannot support a finding of causation as to a degenerative condition that spans years of treatment that progresses from one stage to another." Citing *Sumner v. Smith,* 257 S.E.2d 825, 827 (Va. 1979), the District Court stated that unlike in that case where the evidence of pain and injury in the automobile accident was immediate, expert testimony was necessary to prove "causation of a degenerative condition such as a pelvic prolapse that began roughly eight years before an accident." Without citing any authority, the Court stated, "Virginia law, as well as the law from other courts in this Circuit, support that conclusion." [JA878, JA902-904.]

By an order dated March 9, 2023, the District Court denied Roop's motion for a new trial. On March 10, 2023, the Court entered an order of final judgment for Roop in the amount of $105,216. This appeal followed.

The dispositive issue in this appeal is whether Virginia's law setting the quantum of evidence required to prove causation was met where the fact witness testimony of Roop, Barton, and Dr. Guerette provided a clear basis, when the evidence is viewed in the light most favorable to the Roop, the non-moving party, for the jury to find that the June 2019 automobile accident was a proximate cause of Roop's pelvic prolapse. Where the District Court's jurisdiction is premised on its concurrent jurisdiction over a matter of state law because of complete diversity of the parties' citizenship, the trial is conducted according to the procedure of the federal courts but the law to be applied is that of the forum state – in this instance, the Commonwealth of Virginia. *Gaspirini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, [1]98 (4th Cir. 2014). The function of diversity jurisdiction is to provide a neutral forum for the out-of-state litigant while providing the plaintiff with the same legal rights that would have been afforded to her in state court. The federal courts' "role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue."[4] *Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

---

[4] If there is any doubt as to whether the Supreme Court of Virginia would require expert testimony to prove causation of a physical injury in a tort case not

DeSousa's argument in support of its Rule 50 motion, and the District Court's decision thereon, were premised on the law of North Carolina, and to a lesser extent the law of Tennessee as applied by the Federal District Court for the Western District of Virginia in *Smith v. GMC*, 376 F. Supp. 2d 644 (W.D.Va. 2005), despite acknowledging that the approach to expert evidence in these states was markedly different from that in Virginia. There is so support for the contention made by DeSousa and adopted by the District Court that the application of a state's substantive law of evidence and matters of proof can be interpreted according to the law of "sister courts" within the Circuit that does not comport with the law of the forum state.

Conceding that under the District Court's in limine ruling, Dr. Guerette's evidence testimony was limited to issues of fact and not to be given the weight of an expert, the law of Virginia applicable to this case permits fact evidence to establish proximate cause as a question of fact for the jury, with the jury – not the trial court – assessing the credibility to be given to a witness who was not qualified as an expert and did not render an expert opinion as to causation. Where the witness has the credentials of an expert, but is not designated as such, the trial court may address the

alleging medical malpractice, this Court should certify that question to the Supreme Court of Virginia, and not speculate as the District Court did by analogizing to other states laws where the issue is settled.

potential confusion of the jury through a proper instruction, rather than depriving the plaintiff of her opportunity to have the jury determine her case.

Virginia's appellate courts consistently "disapprove the grant of motions which 'short circuit' the legal process thereby depriving a litigant of his day in court." *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. Partnership*, 480 S.E.2d 471, 472 (Va. 1997). The District Court's action, and its reliance on the law of "sister courts" inapplicable to Virginia cases, deprived Roop of the right afforded to her by Virginia law to have the jury decide whether her evidence established DeSousa's admitted negligence was the case of all, none, or some of her claimed injuries.

The District Court made two distinct errors. First, it improperly "analogized" from the law of "sister courts" that Virginia should always require expert testimony to prove causation for a physical injury in a tort action other than medical malpractice – even though there is clear Virginia precedent that this is not so.

Second, the Court misstated the unrebutted testimony that Roop's pelvic prolapse in 2019 *was not* an exacerbation of the previously diagnosed stage one vaginal prolapse. Rather, Dr. Guerette testified that this was a new injury unrelated to the condition diagnosed in 2011. [JA77-79.] The Court's repeated assertion that the 2019 injury was a degeneration of a prior condition is simply not supported by the evidence and demonstrates that the Court's application of what it presumed to

be the law in Virginia was not well-grounded with respect to the specific circumstances of this case.

STANDARD OF REVIEW

A trial court may grant judgment as a matter of law when it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009). Likewise, on appeal, this Court will affirm only if a reasonable jury could rule in favor of the moving party; if reasonable minds could differ, the appellate court must reverse. *A Helping Hand, LLC v. Balt. Cty.*, 515 F.3d 356, 365 (4th Cir. 2008). Thus, this Court will review *de novo* the district court's grant of a Rule 50(a)(1) motion and will view the evidence in the light most favorable to the nonmoving party. *Lavis v. Reverse Mortg. Solutions, Inc.*, 40 F.4th 181, 186 n.2 (4th Cir. 2022); *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 332 (4th Cir. 2013).

ARGUMENT AND AUTHORITIES

## I. The District Court Erred by Relying on Precedent from Outside Virginia in Sustaining DeSousa's Rule 50 Motion

DeSousa's basis for seeking the Rule 50 motion to take from the jury the determination whether Roop's pelvic prolapse and the subsequent need for repeated medical intervention was proximately caused by the automobile accident was premised entirely on the law applied in states other than Virginia. DeSousa never

14

provided any basis for looking to "sister courts" to interpret Virginia substantive evidence law.[5]

In Virginia, fact testimony is admissible to prove proximate causation. *Todt v. Shaw*, 286 S.E.2d 211, 213 (Va. 1982) (fact testimony sufficient to raise a jury question even when expert testimony failed to establish causation); *Sumner,* 257 S.E.2d at 827 ("[direct medical] evidence is not a prerequisite to recovery" in a tort action not asserting medical malpractice). In *Sumner*, the Supreme Court of Virginia held that testimony of the plaintiff, indirect medical evidence, and the reasonable inferences derived therefrom presented a jury issue as to causation. *Id.* at 827; *see also Gwaltney v. Reed*, 84 S.E.2d 501, 503 (Va. 1954). "All that is required is that a jury be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible." *Bly v. Southern Ry. Co.*, 31 S.E.2d 564, 570 (Va. 1944); *see also Bussey v. E.S.C. Restaurants, Inc.*, 620 S.E.2d 764, 768 (Va. 2005). *Cf. Summers,* 801 S.E.2d at 426-27

---

[5] When used in the opinions of this Court, the term "sister courts" does not refer to courts of states apart from the forum state of a diversity action, but to the "sister courts of appeals" within the federal system. *See*, *e.g.*, *United States v. Groves*, ___ F.4th ___, ___, slip op. at 11 (4th Cir. 2023); *Rogers v. Kijakazi*, ___ F.4th. ___, ___, slip op. at 7 (4th Cir. 2023); *United States v. Robinson*, 55 F. 4th 390, 399 (4th Cir. 2022). Similarly, when used by District Courts, the term applies to other *federal* trial courts within the circuit addressing *federal law*. *See*, *e.g.*, *Moke Am. LLC v. Am. Custom Golf Cars, Inc.*, CIVIL No. 3:20cv400, slip op. at 14 (E.D. Va. 2022); *Webster v. Chesterfield Cnty. Sch. Bd.*, 534 F.Supp.3d 537, 551 (E.D. Va. 2021).

When evidence of causation is presented by fact witnesses, the lack of the witnesses' expert qualification goes to the weight of their testimony, not its admissibility. *Mullin v. Mullin*, 610 S.E.2d 331, 337-38 (Va. App. 2005). Fact witness testimony regarding the causation of an injury is admissible for whatever weight the fact finder may choose to give it. *Peterson v. Neme*, 281 S.E.2d 869, 872 (Va. 1981); *see also Walrod v. Matthews*, 171 S.E.2d 180, 186 (Va. 1969).

DeSousa conceded that in Virginia law the role of expert testimony to establish causation between an automobile injury and a specific medical condition is not concordant with the out-of-jurisdiction precedent cited in his pre-trial brief. To address this deficiency in the argument, the District Court in its memorandum opinion, relied on *Summers*. The District Court stated that Virginia "courts distinguish between simple and complex causation, in part by requiring differing levels of expert testimony and degrees of medical certainty in linking alleged injuries with negligent conduct."

The District Court concluded that the fact witness evidence failed to establish causation because a connection between the specific medical condition and an automobile accident was not one within the common knowledge of the jury and therefore required expert testimony to establish how the accident could have caused the condition to occur or worsen. While *Summers* plainly supports that position, the Supreme Court of Virginia specifically limited the application of the simple/complex

cause to claims for medical malpractice, specifically stating that this principle is applied there, *but is inapposite to non-medical malpractice cases*. *Summers*, 801 S.E.2d at 426. Thus, application of the "*Summers'* distinction of complex and simple causation" is limited to medical malpractice cases in Virginia and the District Court erred in inferring that it could be extended to personal injury torts by "analogy" to "sister courts" within the circuit.

Thus, in Virginia, not only is expert testimony not required to establish a causal link between a negligent act, other than an alleged act of medical malpractice, and its causing injury including the occurrence or worsening of a medical condition, but also that the causal link will remain a jury question *even where there is contrary expert testimony*. *Sumner,* 257 S.E.2d at 827. In *Norfolk and Western Ry. Co. v. Chittum*, 468 S.E.2d 877 (Va. 1996), the Supreme Court of Virginia held that, "even when medical testimony fails to establish causal connection expressly, a plaintiff's testimony alone is sufficient to create a jury issue regarding causation." *Id*. at 882 (cleaned up). DeSousa presented no countervailing testimony to rebut Roop's fact witnesses relating the development of the pelvic prolapse in 2019 following the automobile accident, thus the evidence, viewed in a light most favorable to Roop, was sufficient to raise a jury issue and survive the Rule 50 motion.

The Supreme Court of Virginia has often criticized actions by the Commonwealth's trial courts that "short-circuit" litigation. Motions both to strike

and for summary judgment, the Virginia equivalents of a Rule 50 motion, are disfavored in negligence actions. *Rascher v. Friend*, 689 S.E.2d 661, 665-66 (Va. 2010); *Brown v. Koulizakis*, 331 S.E.2d 440, 445-46 (Va. 1985); *cf. Seyfarth*, 480 S.E.2d at 472. Summary judgment is a "drastic remedy" and is disfavored in negligence actions. *Fultz v. Delhaize America, Inc.*, 677 S.E.2d 272, 274 (Va. 2009). "Thus, if the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate." *Id.*

The substantive law regarding the need for expert evidence in Virginia and the "sister states" relied upon by DeSousa and the District Court are markedly distinct. Virginia's interpretation and application of its law is decidedly more favorable regarding allowing the jury to resolve issues of causation. By "short-circuiting" the jury's opportunity to decide whether the fact witness evidence was sufficient to establish a causal connection between the automobile accident and the worsening of Roop's pelvic prolapse, the District Court erred because the substantive Virginia law favors having such issues decided by the jury. The judgment should be reversed, and the case remanded for a new trial permitting the jury to decide whether DeSousa's admitted negligence was a proximate cause of Roop's pelvic prolapse injury.

## II. The District Court's Finding that the Pelvic Prolapse was a Pre-Existing Degenerative Condition that Required Expert Testimony to Establish Causation is Not Supported by the Evidence

As already asserted, the law of Virginia does not require expert testimony to establish that a negligent act, other than one of medical malpractice, is a proximate cause of an injury. However, because the District Court premised its application of the law on its erroneous interpretation of the evidence as establishing that Roop's 2019 pelvic prolapse was a continuation of her previously diagnosed vaginal prolapse, it is possible that the Court believed that expert testimony was required to show that the level of injury in 2019 was related to the accident and not the result of natural degeneration. Roop maintains that even if under Virginia law expert testimony would not be necessary to prove that the negligent act, and not natural degeneration, was the cause of the exacerbated injury. Thus, the District Court's granting of DeSousa's Rule 50 motion and denial of the Roop's Rule 59 motion under such theory favor of DeSousa was based on fact determinations of the court which are not supported by the record as Guerette was not permitted to testify to the same being that he was a fact witness and not designated as an expert.

Dr. Guerette testified as a fact witness to establish when Roop suffered pelvic prolapse. Dr. Guerette testified that the 2019 pelvic prolapse *was not* related to the 2011 insignificant vaginal prolapse. DeSousa put on no evidence to rebut that testimony. The District Court's finding that the pelvic prolapse was a degenerative

condition resulting from or related to the vaginal prolapse of eight years previous was plainly wrong and without support in the evidence. To the extent that the Court relied upon this erroneous interpretation of the evidence as the basis for its conclusion that expert testimony was required to establish causation between the automobile accident and the 2019 pelvic prolapse, which Roop maintains is not the law of Virginia in any case, the Court's judgment is tainted by its misstatement of the facts and should be reversed.

## CONCLUSION

For these reasons, Roop respectfully requests that the Court reverse the judgment of the District Court granting DeSousa's Rule 50 motion in part and remand the case for further proceedings permitting her claims to be presented fully to the jury for consideration of liability and damages arising from Roop's pelvic prolapse.

## REQUEST FOR ORAL ARGUMENT

Appellant desires to present oral argument before a panel of the Court.

Respectfully submitted,
Samantha Roop
By Counsel


/s/ Samantha B. Cohn
Samantha B. Cohn
GEOFF MCDONALD & ASSOCIATES, P.C.
8720 Stony Point Parkway, Suite 250
Richmond, VA 23235
T: 757-281-8904
SCohn@mcdonaldinjurylaw.com

John S. Koehler
The Law Office of James Steele, PLLC
P.O. Box 21652
Roanoke, Virginia 24018
T: 540-632-5994
john@jamessteelelaw.com
*Counsel for Appellant*